## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LTC Holdings, Inc., *et al.*, | ) | Case No.: 14-11111 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| ——————————————— | ) | |
| Alfred T. Giuliano, Chapter 7, | ) | |
| Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.: 15-51889 (CSS) |
| | ) | |
| The Insurance Company of the | ) | |
| State of Pennsylvania, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| Alfred T. Giuliano, Chapter 7 Trustee, | ) | |
| | ) | |
| v. | ) | Adv. No.: 16-51036 (CSS) |
| | ) | (consolidated with Adv. No. 15-51889) |
| The Insurance Company of the State | ) | |
| Of Pennsylvania, Lexon Surety Group | ) | |
| LLC d/b/a Lexon Insurance Company | ) | |
| And Bond Safeguard Insurance | ) | |
| Company | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

## <u>OPINION</u>

**Klehr Harrison Harvey Branzburg LLP**
Richard M. Beck
919 Market Street, Suite 1000
Wilmington, DE  19801
-and-
**Chapman and Cutler LLP**
David T. Audley

**Whiteford Taylor & Preston LLC**
Thomas J. Francella, Jr.
405 North King Street 500
Wilmington, DE  19801
-and-
**Chiesa Shahinian & Giantomasi PC**
Armen Shahinian

Michael T. Benz
111 West Monroe Street
Chicago, Illinois 60603

Counsel for BMO Harris Bank, N.A.

Andrew S. Kent
Scott A. Zuber
One Boland Drive
West Orange, NJ 07052

Counsel for the Insurance Company of the State of Pennsylvania

**Fox Rothschild LLP**
Seth A Niederman
919 Market Street, Suite 300
Wilmington, DE 19899-2323
        -and-
Michael G. Menkowitz
William H. Stassen
Dana S. Katz
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222

Counsel for Alfred T. Giuliano
Chapter 7 Trustee for the Estate of
LTC Holdings, Inc., et al.,

Dated: February 4, 2019

Sontchi, C. J._____

## INTRODUCTION

Bankrupt and insolvent entities tend to struggle in the runup to bankruptcy or insolvency. Teetering finances, poor management, or simply a bad business model may plague these companies. Economic difficulties may exacerbate these pressures and leave companies vulnerable to powerful, exploitative actors. As such, the Bankruptcy Code and the laws of New York State provide protections for debtors and insolvents that reach back to before the bankruptcy filing or insolvency. These statutes allow for the avoidance of fraudulent transfers and transfers without fair consideration occurring prior to the bankruptcy or insolvency if those transfers caused or happened during insolvency.

2

Before the Court is a motion for partial summary judgment on some of these statutes, as well as smaller related matters. Here, a surety is seeking to dispose of a Trustee's allegations of wrongdoing.

This Court will deny summary judgment on most counts pertaining to fair or reasonably equivalent consideration. The agreement governing the transfers does not give a value for the consideration given by each side and other evidence does not fill in this factual gap. Further, the Court lacks information pertaining to insolvency at the time of transfers and, if there was no insolvency at the time, then to the causal relationship between the transfers and the insolvency. Consideration, insolvency, and causality are factually-driven inquiries.

The record is not clear or strong enough to support an entry of summary judgment in such a fact-dependent context. Courts should hesitate to cut off discovery when the facts are sparse, contradictory, or vague. Because this is the case here, the Court will deny summary judgment.

However, the Court will grant summary judgment as to the counts pertaining to fraud. Trustee points to few badges of fraud and does not at all articulate the crux of his allegation that ICSP threatened Debtors.

## JURISDICTION & VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F) and (H).

**PROCEDURAL HISTORY**

Debtor Lakeshore Toltest Company ("LTC") was a construction company and parent of construction companies Toltest, Inc. ("Toltest") and Lakeshore Engineering Services ("LES"), collectively "Debtors."[1] The United States had retained Debtors to perform several construction projects, including structures in the Middle East for the Department of Defense.

On May 2, 2014 ("Petition Date"), Debtors filed a voluntary Chapter 7 petition. Two and half years later, the Trustee filed a complaint against the Insurance Company of the State of Pennsylvania ("ICSP"), a surety for several Debtor Government contracts.[2] The complaint alleges, among other things, that ICSP forced Debtors to enter into an unfavorable financing arrangement while they were struggling financially. In this arrangement, memorialized by contract, parties agreed to be governed by New York law.[3] At the end of 2017, ICSP moved for summary judgment on the first five counts of the complaint.

**STATEMENT OF FACTS**

Trustee complains that ICSP bullied and fleeced the Debtors when they were struggling financially. He contends that months before the Petition Date, ICSP pressured Debtors to enter into an unfavorable and potentially fraudulent financing arrangement that required Debtors to give up control and make substantial transfers to ICSP while

---

[1] LTC also has a parent and affiliate debtors, which are not implicated here. The organization chart in D.I. 83, at p.13 may prove useful.

[2] Adv. Pro. 15-51889. All "D.I."s refer to this proceeding unless otherwise stated.

[3] D.I. 77-2, at § 47.

getting little to nothing in return. He wants the court to avoid the transfers Debtors made to ICSP and to compel ICSP to return these transfers to Debtors. To this end, Trustee brings nine counts against ICSP, which responds by seeking summary judgment on Counts 1-5 concerning avoidance and recovery of fraudulent transfers and conveyances. The remaining four counts concern preferential transfers, defendant's liability, and breach of contract.  ICSP contends that it did not seek to and did not take advantage of LTC. On the contrary, the surety argues that it was acting to reign in a profligate principal.[4] Furthermore, it counters that it did provide adequate consideration by agreeing to forego its clear contractual remedy stemming from the principle Debtors' non-performance. Because the value of this forbearance remains uncertain, the Court will deny summary judgment on most counts. However, ICSP has shown that it is entitled to relief on a fraud-related count.  The Court will grant summary judgment on this count.

Around September 2009, ICSP issued to the Debtors a series of bonds ("Bonds") as surety on certain of the Debtor's Government contracts ("Bonded Projects"), guaranteeing that the contracts would be completed.[5] At about the same time, LES and ICSP executed an indemnity agreement, which Toltest and LTC joined the following year (collectively the "Agreement of Indemnity").[6] This agreement required Debtors to

---

[4] D.I. 100, at. p.11.

[5] D.I. 90-2, at ¶ 12; D.I. 20 (Counterclaims), at ¶¶ 7-9.

[6] D.I. 90, at pp.4-5; D.I. 78, at p.7; D.I. 79-1, at ¶¶ 4-5; D.I. 77-3, and D.I. 77-4.

indemnify ICSP against liabilities arising under the Bonds. ICSP executed the Bonds in reliance upon this and at Debtors' request.[7]

In the event of default, the Agreement of Indemnity allowed ICSP to demand that LTC provide "funds equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion regardless of whether any actual liability for Loss exists under any of the Bonds."[8] Such events of default include refusal or inability to pay or perform, breach of contract, petition for reorganization, default on a credit facility agreement, and proceedings that interfere with LTC's use of certain equipment.[9]

The United States terminated some Bonded Projects for default and threatened to terminate more.[10] ICSP and Debtors have agreed that such termination was wrongful.[11] Nevertheless, Debtors were in default under the Agreement of Indemnity.[12] The default triggered multiple remedial rights for ICSP against Debtors. Two critical rights were ICSP's right to be indemnified and its right to demand that LTC put up as collateral an amount determined by ICSP to guard against losses it anticipated.[13]

---

[7] D.I. 79; D.I. 79-1, at ¶ 7; D.I. 77-2, at third Whereas.

[8] D.I. 77-3, at §3.4.

[9] D.I. 77-3, at §5.2

[10] D.I. 77-2, at first Whereas

[11] D.I. 77-2, at first Whereas. This has not been resolved.

[12] D.I. 77-2, at § 32.

[13] D.I. 77-2, at § 32.

Meanwhile, LTC was hurting. It was under "tremendous financial strain" and "unable to perform or complete" its Bonded Projects.[14] These projects were "in various stages of completion."[15] In dire financial straits and with more trouble looming, Debtors entered into a Conditional Financing and Trust Account Agreement ("CFTA") with ICSP in December of 2013.[16] Under the CFTA, Debtors were to give ICSP access and control over various of their affairs, as well as a payment and mortgage worth around $4 million and other collateral (collectively "Collateral").[17] In return, ICSP was to hand over $8.5 million to help complete Bonded Contracts and to forbear from exercising the two key rights above.

The CFTA put in place several provisions that allowed ICSP exercise control over LTC and its assets.[18] ICSP received power of attorney allowing it, among other things, to "execute …any other instruments or documents necessary to effectuate the sale or disposition of any of the Collateral… "[19] LTC was required to share with ICSP – among other things – certain monthly reports, scheduling progress, billings to date, contract receipts, statuses of payments and costs and copies of any joint venture agreements governing certain relationships.[20] ICSP also obtained "unrestricted access to [certain of

---

[14] D.I. 77-2, at fifth and sixth Whereas.

[15] D.I. 77-2, at fifth Whereas.

[16] D.I. 77-2

[17] D.I. 77-2, at §§ 7, 13, 14; D.I. 78, at pp. 13, 15; D.I. 90, at p.16. (CFTA §7 is broad enough to encompass other theoretical assets, but neither side casts them as consideration).

[18] Neither party attempts to place a value on these provisions.

[19] D.I. 77-2, at §16.

[20] *Id.* at §9.

the Debtors'] premises, books and records, and the books and records of any affiliated entities .... "[21] ICSP's power extended to the financial realm. For example, LTC agreed to create a "trust checking account (the "Trust Account") for the receipt of all Contract Funds, Miscellaneous Receivables and Surety loans or advances, in a bank chosen solely by Surety .... "[22]  Even further, LTC had to provide an irrevocable letter to the owners or obligees on the various construction contracts "directing that Obligee deliver all payments or other Contract Funds from the Bonded Contracts to Surety or the Trust Account, made payable jointly to Surety and Contractors."[23]

### A. Parties differ on the existence of genuine issues of material fact.

Trustee argues that genuine issues of material fact exist regarding fair consideration, good faith, and actual intent to defraud creditors at the time that the CFTA was executed.[24]

ICSP disagrees. It states that its forbearance was sufficient consideration.  ICSP further denies that its dealings reveal signs of fraud. It argues that the CFTA was a transparent deal struck by a surety trying to reign in its profligate principal.[25] For emphasis ICSP, contrasts the case with one "in which a fraudster transferred an asset to

---

[21] *Id*. at §37.

[22] *Id*. at §13; *see also id*. at §14. "Contract Funds" is defined as "any and all monies payable to or received by Contractors, or any other person or entity on Contractors' behalf or at Contractors' direction, under or in connection with the Bonded Contracts .... " *Id*. At §2(a). "Miscellaneous Receivables" is defined as, inter alia, "all income from, as well as all proceeds from, the sale, lease, recovery on or other disposition of any and all Collateral (as defined in Paragraph 7 of this Agreement) herein or previously assigned to Surety or with respect to which Surety is hereby or has been provided a security interest or lien .... " *Id*. at §2(c).

[23] *Id*. at § 15.

[24] D.I. 90, at p.14.

[25] D.I. 100, at pp. 16-18.

a friend or relative, while secretly maintaining control over the asset."[26] Finally, ICSP is unimpressed with the Trustee's good faith argument. "No evidence is cited, and none exists, of coercion, nor of any prior obligation owed by ICSP to provide funding for the Debtors. No case law is cited."[27] ICSP's characterization is correct. In any event, good faith is only implicated in New York Debtor and Creditor Law ("NYDCL") § 272, where it is intertwined with fair consideration. Since the dispute over fair consideration is central to deciding this motion, this opinion will focus on fair consideration, not good faith.

## ANALYSIS

### A. Fed. R. Civ. P. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28]  In deliberating, courts must believe the non-movant's evidence and draw all reasonable inferences in his favor.[29] Where the record taken as a whole could not lead a rational trier of fact to find for the summary judgment nonmovant, there is no genuine issue for trial.[30]

---

[26] D.I. 100, at p. 17.

[27] D.I. 100, at p. 18.

[28] Fed. R. Civ. P. 56

[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986.

[30] *Ricci v. DeStefano*, U.S.2009, 129 S.Ct. 2658, 557 U.S. 557, 174 L.Ed.2d 490.

### B. A discussion of consideration: the most pervasive issue of material fact

"Fair consideration" plays a prominent role in the complaint and in the factual dispute between the parties. It merits a separate discussion here.

Fair consideration is the $300 million question. This is the amount that ICSP alleges it had the right to demand as collateral to guard against anticipated losses. ICSP writes that forbearing from this demand is more than "fair consideration". Trustee ignores the $300 million elephant in the room. The CFTA itself does not resolve this issue. It does reaffirm that ICSP had the right to be indemnified and to demand that LTC put up as collateral an amount determined by ICSP to guard against anticipated losses.[31] It also confirms that LTC agreed to forbear from exercising these rights.[32] However, there is no mention of the value of the forbearance. Though ICSP had sole discretion to determine the amount of the collateral, the contract does not disclose its value or range. Perhaps more understandingly so, the CFTA is also silent on the value of the control it permits ICSP over Debtors' affairs – this can not be so easily monetized. Nonetheless, the contract's silence on the value of the consideration it is meant to enforce creates more mystery.

---

[31] D.I. 77-2, at § 32.

[32] Specifically, in § 32 (*Id.*), ICSP has agreed to forbear its right to enforce these rights so long as there is no default. Default is defined in § 33.

### C. Application of Law to Counts

In counts one through five, Trustee seeks to avoid and recover contract payments from non-bonded projects, mortgage issuance on unencumbered property in North Dakota, and UCC financing statements with respect to the Collateral.

### i. COUNT ONE

Trustee seeks avoidance and recovery of constructive fraudulent transfers pursuant to 11 U.S.C. §§ 544(b), 548(a)(1)(B), 548(b), 550[a] and 551. Trustee writes that within two years of the Petition Date, Debtors made certain transfers "Fraudulent Transfers" pursuant to the CFTA. These transfers include: contract payments from non-bonded projects, mortgage issuance on unencumbered property in North Dakota, and UCC financing statements with respect to the Collateral. He also writes that other Fraudulent Transfers "may be uncovered through discovery."[33]

11 U.S.C. § 544 governs Trustee's standing. It allows him to act on the Debtors' behalf when they would be able to recover under applicable law. ICSP does not challenge Trustee's ability to bring suit. The Court will deny summary judgment here because the section functions as a justiciability hook, not as a way to prove wrongdoing.

11 U.S.C. § 548(b) allows the trustee of a partnership debtor to avoid transfers to a general partner made within two years before the petition filing if the debtor was insolvent at the time or became insolvent as a result.  Insolvency is governed by 11 USC § 101(32). It defines insolvency to mean that liabilities exceed assets.

---

[33] D.I. 18, at ¶54. Trustee has not specified why he does not know of other such transfers.

11 U.S.C. § 548(a)(1)(B) allows trustees to avoid any obligation within two years of the filing providing that the debtor received less than reasonably equivalent consideration and was 1) insolvent or became insolvent as a result, 2) had unreasonably small remaining capital as a result, 3) incurring debts beyond his ability to pay, or 4) made an insider transfer.

550(a) allows trustees to recover a transfer avoided by 11 U.S.C. §§ 544, 548, and other sections.[34]

551 automatically preserves transfer avoided under 11 U.S.C. §§ 544, 548, and other sections.

The Court will grant summary judgment for 11 U.S.C. § 548(b). Debtors are not partners in a partnership. This statute is inapplicable.

The Court will deny summary judgment for 11 U.S.C. § 548(a)(1)(B) because there is a genuine dispute of material fact as to whether reasonably equivalent value or consideration was received for the transfers.

The Court will deny summary judgment for 11 U.S.C. § 550 because the Court has not held that the transfer can be avoided under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a).

The Court will deny summary judgment for 11 U.S.C. § 551 because the Court has not held that a transfer has been avoided under 11 U.S.C. §§ 522, 544, 545, 547, 548, 549, or 724(a).

---

[34] Though the complaint does not limit itself to subsection (a), other subsections are not applicable.

ii.    COUNT TWO

In Count Two, Plaintiff seeks avoidance and recovery of Fraudulent Transfers under 11 U.S.C. §§ 544(b), 550, and 551 and NYDCL §§ 273, 278, and/or 279.

The Court will deny summary judgment for 11 U.S.C. §§ 544(b), 550, and 551 for reasons described in Count One. As to 11 U.S.C. § 550, the Trustee does not point to subsections besides (a) from which he may recover and the Court does not find any.

NYDCL § 273 defines a fraudulent conveyance or obligation. The section states that if an obligation is incurred without fair consideration and the acquirer is insolvent or will be because of the obligation, then that obligation is fraudulent. Insolvency, under § 271, means that liabilities exceed assets. Fair consideration, under § 272, is when the consideration is "a fair equivalent" to or "not disproportionately small as compared with the value of the property, or obligation obtained." Courts emphasize the need to reflect upon the circumstances of each case in determining whether "fair consideration" exists.[35] In other words, "fair consideration" is a factually-driven inquiry.[36]

NYDCL §§ 278 and 279 concern creditor rights as to fraudulent claims. NYDCL § 278 concerns rights pertaining matured claims and NYDCL § 279 concerns unmatured claims. NYDCL § 278 is a provision intended protect innocent purchasers of the allegedly

---

[35] *See e.g. Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 445 (S.D.N.Y. 2014) and *Sardis v. Frankel*, 113 A.D.3d 135, 142, 978 N.Y.S.2d 135, 141 (2014).

[36] *Joslin v. Lopez*, 309 A.D.2d 837, 838, 765 N.Y.S.2d 895, 897 (2003); *Commodity Futures Trading Comm'n v. Walsh*, 17 N.Y.3d 162, 175, 951 N.E.2d 369, 377 (2011); *Halsey v. Winant*, 258 N.Y. 512, 523, 180 N.E. 253, 256 (1932).

fraudulent obligation.[37] It allows creditors who are tied to fraudulent claims to annul the obligation or disregard the conveyance. Purchasers with neither fair consideration nor actual fraudulent intent may retain the obligation as security for repayment.[38]

NYDCL § 279 gives courts broad legal and equitable powers to deal with unmatured fraudulent claims. These powers include, but are not limited to, restraining the defendant from disposing of his property, appointing a receiver, setting aside the conveyance, and annulling the obligation.

These two provisions turn on NYDCL § 273. Without this section rendering the transfers fraudulent, the Court can not rule on either a section 278 claim or a section 279 one. The two hallmarks of fraudulent transactions under NYDCL § 273 are insolvency and unfair consideration. Without either, the obligation is not fraudulent as to NYDCL § 273. Like fair consideration, insolvency involves a fact-intensive inquiry[39] not readily lending itself to summary judgment resolution.[40] And here, the Court can determine neither fair consideration nor insolvency.

The Court can not determine whether Debtors were insolvent upon signing the CFTA or whether the CFTA made them so. It is not clear that LTC was insolvent when it signed the CFTA. For insolvency, NYDCL § 271 requires liabilities to exceed the fair

---

[37] NYDCL § 278(1) limiting creditor remedies to exclude purchasers "for fair consideration without knowledge of the fraud at the time of the purchase."

[38] NYDCL § 278(2).

[39] *Salovaara v. Eckert*, 6 Misc. 3d 1005(A), 800 N.Y.S.2d 356 (Sup. Ct. 2005), aff'd as modified, 32 A.D.3d 708, 821 N.Y.S.2d 59 (2006).

[40] *Klein v. Tabatchnick* 610 F.2d 1043, 1048 (2nd Cir. 1979).

salable value of the assets. It is unclear whether this was the case at the time. Trustee asserts that at the time of transfer Debtors were insolvent, as their total liabilities exceeded the fair value of their assets. But the documents do not provide enough proof of such insolvency.[41] Insolvency inquiries may involve retracing a complex web of business relationships and weighing the role of external factors in the insolvency. There may also be expert testimony to consider. Summary judgment is inappropriate where such testimony is material in a dispute.[42]

Even sidestepping the problem of insolvency by accepting that LTC eventually became insolvent and filed for bankruptcy, the Court would have to determine that the obligations caused the insolvency. This is far from apparent, as LTC was already facing headwinds when it incurred the obligations. Other troubles may have nudged it into insolvency. In any event, the Court needs to know more specifics about LTC's difficulties, its management thereof, and its surrounding circumstances before blaming the obligations for LTC's insolvency.

Second, it is unclear whether fair consideration was given. Under NYDCL § 272, consideration for property or an obligation is fair when a "fair equivalent" of property is conveyed in exchange in good faith, or when it is used to secure a present advance that is not "disproportionately small".

---

[41] D.I. 18, at ¶58.

[42] *See e.g. Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 247 (3d Cir. 1968).

Finally, as to NYDCL §§ 278 and 279, the maturity of Trustee's Fraudulent Transfer-related claims against ICSP is unclear. Therefore, a material fact remains as to the applicability of these sections.

The Court will deny summary judgment as to NYDCL § 273 because it has not held that the conveyances are fraudulent. And with it, it will deny summary judgment as to NYDCL §§ 278 and 279.

*iii.    COUNT THREE*

The allegations in Count Three have to do with the avoidance and recovery of fraudulent conveyances by persons in business. Trustee wants the court to avoid the Fraudulent Transfers and to recover them on behalf of the Debtors' estate. He bases his claim on 11 U.S.C. §§ 544(b), 550, 511, and NYDCL §§274, 278, and 279.

NYDCL § 274 states that if a conveyance without fair consideration leaves the conveyor with "unreasonably small capital" for his business, then that conveyance shall be fraudulent to creditors. Once again, this analysis hinges upon the presence or absence of "fair consideration". As noted, the Court does not have enough information to rule on this. Further, the court does not know how much capital the Debtors had left post-CFTA.[43] Nor does it know what would have constituted a "reasonable" amount.

The Court will deny summary judgment for 11 U.S.C. §§ 544(b), 550, and 551 because of the reasons stated in Counts One and Two. It will also deny summary judgment with respect to NYDCL §§ 278 and 279 for the reasons stated in Count Two.

---

[43] Interestingly, depending upon the collateral ICSP could have demanded in a but-for world, the CFTA may have saved LTC money.

Finally, the Court will deny summary judgment with respect to NYDCL § 274 because the Court can not hold that fair consideration, pursuant to NYDCL § 272, has been given.

iv.     *COUNT FOUR*

Count Four concerns conveyances by a person about to incur debts. Trustee wants the court to avoid the Fraudulent Transfers and to recover them on behalf of the Debtors' estate. He bases his claim on 11 U.S.C. §§ 544(b), 550, 511, and NYDCL §§ 275, 278, and 279.

NYDCL § 275 states that if a conveyance is made without fair consideration and the conveyor "intends or believes that he will incur debts beyond his ability to pay as they mature," then that conveyance shall be fraudulent to creditors. Once again, this analysis hinges upon "fair consideration". As noted, the Court does not have enough information to rule on this. It will deny summary judgment. Further, the Court does not know about LTC's state of mind (at the time of the CFTA signing) regarding its ability to repay debts it incurred.

The Court will deny summary judgment on NYDCL § 275 because the Court can not hold that fair consideration, pursuant to NYDCL § 272, has been given. The Court will deny summary judgment on 11 U.S.C. §§ 544(b), 550, and 551 for the reasons in Counts One and Two. Finally, the Court will deny summary judgment on NYDCL §§ 278 and 279 for the reasons stated in Count Two.

v.     *COUNT FIVE*

In Count Five, Trustee seeks avoidance and recovery of fraudulent conveyances with intent to defraud. Trustee wants the Court to avoid the Fraudulent Transfers and to

17

recover them on behalf of the Debtors' estate. He bases his claim on 11 U.S.C. §§ 544(b), 548(a), 550, 511, and NYDCL §§ 276, 276-a, 278, and 279.

11 U.S.C. § 548(a) is divided into two parts, § 548(a)(1) and § 548(a)(2). The latter is related to charities and inapplicable to this case. The former can be split into § 548(a)(1)(A) and § 548(a)(1)(B). Having already disposed of § 548(a)(1)(B), this opinion turns to § 548(a)(1)(A). This subsection allows trustees to avoid obligations incurred within two years of filing if there was "actual intent to hinder, delay, or defraud" debtors. NYDCL § 276 states that transfers with "actual intent…to hinder, delay, or defraud" creditors are fraudulent.  NYDCL § 276-a concerns attorney's fees in such scenarios.

Fraudsters rarely reveal their plans to people who aren't in on the scheme. To avoid getting caught, many actively conceal their tracks. Even legitimate victims have difficulty proving actual intent to hinder, delay, or defraud. Because of this, New York law allows parties to rely on badges of fraud to support their case. These badges capture "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." They may "include a close relationship between the parties to the alleged fraudulent transaction, a questionable transfer not in the usual course of business, inadequacy of the consideration, and retention of control of the property by the transferor after the conveyance."[44] Others include the "suspicious timing of the conveyance after the debt was incurred;  the use of fictitious parties;  and

---

[44] *In re Sharp Intern. Corp.*, C.A.2 (N.Y.)2005, 403 F.3d 43.

18

information that the transferor was insolvent as a result of the conveyance."[45]  When these marks are deep or numerous enough, they support a suspicion of wrongdoing and allow the case to survive summary judgment. But suspicion alone is not enough.[46]

Trustee's argument boils down to saying that because the CFTA allowed ICSP to exercise extensive control over Debtors' affairs in exchange for little consideration, this must have been part of a plot to hinder, delay, or defraud Debtors and their creditors.[47]

Trustee fails to support his allegations that ICSP sought to hinder, delay, or defraud creditors. Neither his complaint nor brief articulates a theory of fraud against creditors. For example, he does not explain which creditors ICSP intended to defraud or how the CFTA or other action would have advanced this goal. The situation does not improve for Trustee if the Court accepts that creditors would have been harmed indirectly by way of ICSP diminishing the Debtors' estate's value.

Trustee does not support his allegation that ICSP sought to hinder, delay, or defraud Debtors, either. His only support is his naked assertion that "ICSP threatened and/or made a demand upon Debtors" right before the two parties signed the CFTA.[48] From the record, the Court can only infer that the "demand" Debtors feared was ICSP exercising its remedial right to demand cash collateral.

---

[45] *Scantek Medical, Inc. v. Sabella,* 2008, 583 F.Supp.2d 477.

[46] *In re Kovler,* 249 B.R. 238, 244 (Bankr. S.D.N.Y.), supplemented, 253 B.R. 592 (Bankr. S.D.N.Y. 2000), and corrected, 329 B.R. 17 (Bankr. S.D.N.Y. 2005)

[47] D.I. 90, at pp.17-18.

[48] D.I. 18, at ¶¶19-20.

The lack of a detailing of the alleged threat is not the only noteworthy absence. Important badges of fraud are missing as well. Trustee does not claim that the CFTA was unusual or ushered through hastily or in secret. He does not say that ICSP used improper leverage over the Debtors such that they couldn't refuse the CFTA. As for the consideration, Trustee is correct that the value of the consideration is unknown. However, forbearance from demanding cash collateral the size of one's choosing is not minor consideration. Further, the close relationship between the parties and ICSP's control over Debtors' affairs does not overwhelm the evidence against Trustee's position. Debtors themselves admit that they were struggling financially when they inked the CFTA. And the deal's forbearance provision shows that at least part of its purpose was to stop the financial hit Debtors would have taken had ICSP exercised its rights under another contract with Debtors. Further, the control provisions, while extensive, are generally designed to effectuate and support ICSP's ability to receive and control the Collateral it was promised under the contract. Thus, the CFTA does not embody a fraudulent scheme, but a follow-up agreement between two parties altering their business relationship to reflect changed circumstances.

The record, taken as a whole, could not lead the reasonable trier of fact to conclude that Debtors have been victimized by ICSP's threats, intimidation, or fraudulent intent. Continued discovery will not remedy this. As a result, ICSP is entitled to judgment.

The Court will grant summary judgment for NYDCL §§276 and 276-a. For the same reasons, it will grant summary judgment for 11 U.S.C. § 548(a)(1)(A).

The Court will deny summary judgment with respect to 11 U.S.C. §§ 544(b), 550, and 551 for the reasons stated in Counts One and Two. It will deny summary judgment on NYDCL §§ 278 and 279 for the reasons in Count Two. It will also deny summary judgment for 11 U.S.C. § 548(a)(1)(B) because of the reasons in Count Two.

## CONCLUSION

The Court will deny summary judgment on all but the following: 11 U.S.C. §§ 548(a)(1)(A) and 548(b); and NYDCL §§ 276 and 276-a as set forth in Count 5. An Order will be entered.